**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **EARL MITCHELL,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.  12-657 (JEB)** |
| **EASTERN SAVINGS BANK, FSB,** | |
| **Defendant.** | |

**MEMORANDUM OPINION**

Following the foreclosure of a rental property located in Southeast Washington, a dispute

arose between Plaintiff Earl Mitchell, a tenant in the building, and Defendant Eastern Savings

Bank, which acquired the property in the foreclosure.  Plaintiff claims that Defendant engaged in

an unlawful self-help eviction on February 9, 2009, by removing his personal belongings,

changing the locks, and barring his re-entry to the property.  In filing suit on February 7, 2012, in

the Superior Court of the District of Columbia, Plaintiff alleged four causes of action connected

to this incident:  wrongful eviction (Count I), retaliatory eviction (Count II), breach of the

implied covenant of quiet enjoyment (Count III), and "punitive damages" (Count IV).  Shortly

thereafter, Defendant removed the case to this Court and now moves to dismiss the suit under

Rule 12(b)(6) for failure to state a claim or, in the alternative, for summary judgment.  Because

the Court finds that Plaintiff cannot state a cause of action for retaliatory eviction or "punitive

damages," it will grant Defendant's Motion as to those Counts (II & IV).  Plaintiff's remaining

claims, however, alleging wrongful eviction and the breach of the implied covenant of quiet

enjoyment (Counts I & III) may proceed.

1

I.       **Background**

There are a number of background facts that appear to be largely undisputed.  To begin

with, Mitchell entered into a written rental agreement with Vasiliki Pappas on January 22, 1999.

See Am. Compl., ¶ 6.  This agreement consisted of a handwritten document, signed and dated by

both parties, stating that "Earl Mitchell agrees to rent from Vasiliki Pappas the upstairs unit plus

one bedroom at 2507 33rd St. S.E. Washington, DC 20020 for one year starting February 1, 1999,

after that month ~~for~~ to month, the rent is $200.00 per month."  Mot., Exh. 8 (Mitchell Lease).

Mitchell moved into the property shortly after executing the agreement.  See Am. Compl., ¶ 7.

In the summer of 2001, while Mitchell continued to live on the property, his landlord

defaulted on the mortgage and Defendant Eastern Savings Bank foreclosed on the property.  See

id., ¶ 9.  Following the foreclosure, ESB initiated proceedings in the Landlord-Tenant branch of

D.C. Superior Court against Pappas and two of the property's tenants, Wudenha Kebede and

Matt Banks, but did not initiate similar proceedings against Mitchell.  See id., ¶¶ 10, 12.

Mitchell attempted to intervene in the Banks case in September 2008, but his motion was denied.

See id., ¶¶ 16-17.  He also sent letters to Defendant's counsel in late September 2008, and again

in early February 2009, in which he continued to assert his rights as a tenant of the property.  See

id., ¶¶ 19-20.  On February 9, 2009, Defendant evicted Mitchell "by removing his personal

belongings from the Property and changing the locks on the doors to permanently bar Plaintiff's

entry."  Id., ¶ 21.  Mitchell claims that as a result of the eviction, he lost "irreplaceable family

heirlooms such as the only known pictures of grandparents and other relatives, . . .  certain power

tools used in his trade which affected his income, and [was] left immediately homeless and

forced to find alternative housing which was ultimately more expensive and burdensome . . . ."

Id., ¶ 24.

Mitchell claims that he was never served with a notice to vacate the property or to correct

any violation of his tenancy.  See id., ¶ 14.  Defendant disputes this, claiming that Mitchell did in

fact receive notice in the form of a December 24, 2008, writ of restitution in the Banks litigation:

> [T]he December 24 writ was an instrument legally issued by the
> Superior Court; was predicated on a judgment for possession; was
> directed to 'Matt Banks and Occupants'; set forth a date whereby
> Eastern would take lawful possession of the 33rd Street property;
> and was executed by the U.S. Marshalls [sic] in accordance with
> Superior Court Landlord-Tenant Rule 16(a).

Reply at 7.

ESB also disputes Mitchell's claimed status as a tenant of the property.  Specifically, it

contends that at the time of the foreclosure, Mitchell became an at-will tenant.  See Mot. at 9.

Mitchell then switched rooms with Banks, moving from the upstairs bedroom he had lived in

under the lease to a room in the basement of the property.  See id. at 8-9.  This "trade" of rooms,

Defendant alleges, constituted an unlawful assignment, which divested both tenants of their at-

will tenancies.  See id. at 10.  Mitchell, Defendant argues, thereby became a squatter with no

right to any form of notice regarding the eviction.  See id. at 11.

## II.     Legal Standard

Defendant's Motion seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim upon which relief can be granted.  Alternatively, Defendant argues that

should the Court consider documents outside of the Complaint, the Motion should be converted

into one for summary judgment.  See Mot. at 5.  The Court, accordingly, will set forth both

standards of review.

### A.     Motion to Dismiss

In evaluating Defendant's Motion to Dismiss, the Court must "treat the complaint's

factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be

derived from the facts alleged.'" <u>Sparrow v. United Air Lines, Inc.</u>, 216 F.3d 1111, 1113 (D.C.

Cir. 2000) (quoting <u>Schuler v. United States</u>, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal

citation omitted); <u>see also</u> <u>Jerome Stevens Pharms., Inc. v. FDA</u>, 402 F.3d 1249, 1253 (D.C. Cir.

2005).  The Court need not accept as true, however, "a legal conclusion couched as a factual

allegation," nor an inference unsupported by the facts set forth in the Complaint.  <u>Trudeau v.

Fed. Trade Comm'n</u>, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting <u>Papasan v. Allain</u>, 478 U.S.

265, 286 (1986)) (internal quotation marks omitted).

     Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a

claim upon which relief can be granted."  When the sufficiency of a complaint is challenged

under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be

liberally construed in plaintiff's favor.  <u>Leatherman v. Tarrant Cnty. Narcotics Intelligence and

Coordination Unit</u>, 507 U.S. 163, 164 (1993).  The notice pleading rules are "not meant to

impose a great burden on a plaintiff," <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 347 (2005),

and he must therefore be given every favorable inference that may be drawn from the allegations

of fact.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 584 (2007).  Although "detailed factual

allegations" are not necessary to withstand a Rule 12(b)(6) motion, <u>id.</u> at 555, "a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal quotation omitted).  Plaintiff must

put forth "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  <u>Id.</u>  Though a plaintiff may survive a 12(b)(6)

motion even if "recovery is very remote and unlikely," <u>Twombly</u>, 550 U.S. at 555 (citing

<u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be

enough to raise a right to relief above the speculative level."  <u>Id.</u> at 556.

"District courts may refer to materials outside the pleadings in resolving a 12(b)(6)

motion. But when they do, they must also convert the motion to dismiss into one for summary

judgment." Kim v. United States, 632 F.3d 713, 719 (D.C. Cir. 2011). Where the Court so

converts, however, the parties must be provided with the opportunity to present evidence in

support of their positions. See Fed. R. Civ. P. 12(d), 56; Kim, 632 F.3d at 719.

B.    Summary Judgment

Summary judgment may be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P.

56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v.

Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by citing to particular parts of materials in the

record." Fed R. Civ. P. 56(c)(1)(A). "A fact is 'material' if a dispute over it might affect the

outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do

not affect the summary judgment determination." Holcomb, 433 F.3d at 895 (quoting Liberty

Lobby, Inc., 477 U.S. at 248). "An issue is 'genuine' if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." Id. The party seeking summary judgment

"bears the heavy burden of establishing that the merits of his case are so clear that expedited

action is justified." Taxpayers Watchdog, Inc., v. Stanley, 819 F.2d 294, 297 (D.C. Cir. 1987).

"Until the movant has met its burden, the opponent of a summary judgment motion is under no

obligation to present any evidence." Gray v. Greyhound Lines, East, 545 F.2d 169, 174 (D.C.

Cir. 1976). When a motion for summary judgment is under consideration, "the evidence of the

non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty

Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 850

(D.C. Cir. 2006); <u>Aka v. Washington Hosp. Ctr.</u>, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*); <u>Washington Post Co. v. U.S. Dep't of Health and Human Servs.</u>, 865 F.2d 320, 325 (D.C. Cir. 1989).  On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence."  <u>Czekalski v. Peters</u>, 475 F.3d 360, 363 (D.C. Cir. 2007).

**III.    Analysis**

Defendant challenges each of the four separate causes of action asserted by Plaintiff, all of which stem from the events surrounding his eviction from the rental property in Southeast Washington.  The Court will address each in turn.

A.    <u>Count I:  Wrongful Eviction</u>

In seeking summary judgment on the first count, Defendant argues that Mitchell lacks the requisite landlord-tenant relationship required to support a claim for wrongful eviction.  <u>See</u> Mot. at 7-11.  Specifically, ESB contends that, with the foreclosure of the property, Mitchell became an at-will tenant and was prohibited from assigning or subletting his room without forfeiting his rights as a tenant.  <u>See</u> <u>id.</u> at 9.  Such forfeiture was triggered here, Defendant argues, when Mitchell unlawfully assigned his living quarters to Banks without ESB's consent.  <u>See</u> <u>id.</u> at 10.  Divested of his tenancy-at will, Mitchell thus became a squatter with no right to receive the notice he is demanding.  <u>See</u> <u>id.</u> at 11.  Plaintiff conversely denies that any assignment occurred and argues that even if it had, Defendant was nonetheless prohibited from engaging in a self-help eviction.  <u>See</u> Opp. at 3-8.

In support of its assertion that an unlawful assignment occurred, Defendant points to testimony and "findings by the Superior Court and the [D.C. Office of Administrative Hearings]."  <u>See</u> Mot. at 8-9.  Mitchell counters with deposition testimony from prior Superior

Court proceedings in the Banks litigation to demonstrate that no assignment ever occurred.  See

Opp. at 7 (citing Transcript of Deposition of Earl Mitchell, attached as Exh. C).  Defendant

responds that the testimony Mitchell cites does not create any factual dispute regarding his

alleged tenancy, thus allowing the Court to resolve the issue on summary judgment without

ordering discovery.  See Reply at 4; Mot. at 7 n.1.  The Court disagrees.  Because the parties

point to arguably disputed facts elicited in other related proceedings, the Court finds that it would

be premature to make a determination as to the status of Mitchell's tenancy based on this record,

particularly since this would deny Plaintiff any opportunity in discovery to develop his

evidentiary support in this case.  See, e.g., Gordon v. Napolitano, 786 F. Supp. 2d 82, 86 (D.D.C.

2011) (finding it "premature" to dismiss or convert to motion for summary judgment where

"Plaintiff has not had the benefit of any discovery to bolster her claims."); McWay v. LaHood,

269 F.R.D. 35, 37-38 (D.D.C. 2010) (noting that pre-discovery summary-judgment motions

should be viewed "with special caution"); Young v. District of Columbia, 752 A.2d 138, 145

(D.C. 2000) (reversing summary judgment on wrongful-eviction claim where factual dispute

concerning whether landlord-tenant relationship existed).

Furthermore, even if there were no factual disputes regarding the status of Mitchell's

tenancy, the D.C. Court of Appeals has left open the possibility that a cause of action for

wrongful eviction may nonetheless be available to an individual who has "something less than

some sort of tenancy."  See Sarete, Inc. v. 1344 U St. Ltd. P'ship,  871 A.2d 480, 494-495 (D.C.

2005) ("In Wilson v. Hart, 829 A.2d 511 (D.C. 2003), a wrongful eviction action pertaining to a

residential apartment, we left open the question as to 'whether a wrongful eviction or breach of

quiet enjoyment action may lie even if appellants' occupancy constituted something less than

some sort of tenancy.'").  As a result, even if Defendant could establish that there was an

unlawful assignment that terminated Mitchell's at-will tenancy, he may still have a cause of

action for wrongful eviction.  This is a matter for the parties to address in a subsequent summary-

judgment motion after discovery.  Count I will thus not be dismissed.

      B.   Count II:  Retaliatory Eviction

      Defendant next argues that Count II fails as a matter of law because the District of

Columbia does not recognize such a cause of action.  See Mot. at 12 (citing to Twyman v.

Johnson, 655 A.2d 850 (D.C. 1995), as unequivocally refusing to recognize retaliatory eviction

as cause of action).  Mitchell fails to respond to this argument at all.  See Opp. at 3-11.  The

Court may thus treat such failure as a concession.  See, e.g., Hopkins v. Women's Div., Gen. Bd.

of Global Ministries, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this

Circuit that when a plaintiff files an opposition to a motion . . .  addressing only certain

arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to

address as conceded."); see also Day v. D.C. Dep't of Consumer & Regulatory Affairs, 191 F.

Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party

makes in a motion, the court may treat that argument as conceded.") (citation omitted).

Mitchell's concession is unsurprising given Twyman's manifest repudiation of retaliatory

eviction as an independent cause of action.  See 655 A.2d at 857-58.  The Court thus dismisses

Count II.

      C.   Count III:  Breach of the Implied Covenant of Quiet Enjoyment

      Defendant then argues that Mitchell's "failure to put forward any facts, whatsoever, in

support of [Count III], is fatal"; even if sufficiently pled, the claim would be "substantively

meritless," as there were never any promises by ESB to Mitchell and thus "no cause of action for

a 'broken promise.'"  See Mot. at 12-13.  Mitchell first addresses the pleading point, noting that

by adopting and incorporating by reference the averments from the previous paragraphs in the

Amended Complaint, he has included "numerous factual allegations supporting the claim." See

Opp. at 8.  And in response to the attack on the merits, Mitchell argues that there need not be a

separate promise, as Defendant suggests, because a cause of action for breach of the implied

warranty of quiet enjoyment lies where a landlord disturbs a tenant's possession of the property

through eviction.  See id. at 9.  In its Reply, Defendant clarifies that the fatal flaw in Mitchell's

claim is the lack of a legitimate tenancy.  See Reply at 8-9.

   "[A] lease carries an implied covenant of quiet enjoyment in the property between a

lessor and a lessee.  The implied covenant of quiet enjoyment is a promise that during the terms

of the tenancy, the tenant must not be disturbed by the lessor or anyone claiming under him or

her or by anyone claiming paramount title."  49 Am. Jur. 2d, Landlord and Tenant § 477 (2012).

"The covenant is not broken unless there is an eviction from, or some actual disturbance in, the

possession by the landlord or by some third person under paramount title."  Hyde v. Brandler,

118 A.2d 398, 400 (D.C. 1955).  As previously discussed in Part III.A, *supra*, there is a material

factual dispute surrounding whether Mitchell has a legitimate tenancy.  Just as it held in regard to

the wrongful-eviction claim, the Court finds it premature to dismiss this claim for breach of the

implied covenant before Mitchell has been afforded an opportunity in discovery to develop his

evidentiary support.  Additionally, even if Defendant can establish that there was no tenancy, the

D.C. Court of Appeals has noted – as it did with the wrongful-eviction tort – that a "breach of

quiet enjoyment action may lie even if appellants' occupancy constituted something less than

some sort of tenancy."  See Wilson, 829 A.2d at 515.  The Court will therefore deny Defendant's

Motion as to Count III.

D.   Count IV:  Punitive Damages

Defendant argues that Count IV is meritless as a matter of law and must be dismissed since "'punitive damages is not an independent cause of action.'"  See Mot. at 13 (citing Botvin v. Islamic Republic of Iran, 604 F. Supp. 2d 22, 25 (D.D.C. 2009)).  Mitchell does not offer any authority to the contrary, instead arguing that whether asserted as a separate cause of action or as a claim for damages, he is entitled to consideration of such damages in this case.  See Opp. at 9-10.  While Defendant is correct that punitive damages are not a separate cause of action, they are available as relief in actions for intentional torts such as wrongful eviction.  See Mendes v. Johnson, 389 A.2d 781, 792 (D.C. 1978) (en banc); Robinson v. Sarisky, 535 A.2d 901, 906 - 907 (D.C. 1988).  The Court will thus dismiss Count IV as an independent count, but will allow Mitchell to seek such damages.  See Am. Compl. at 7 (Prayer for Relief seeking punitive damages).

## IV.  Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order that will grant Defendant's Motion to Dismiss Counts II and IV and otherwise deny the Motion as to the remaining claims, Counts I  & III.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  September 13, 2012